IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| THURMAN LEE HENDERSON, § | |
| Petitioner, § | |
| § | |
| v. § | Civil Action No. 4:07-CV-666-A |
| § | |
| NATHANIEL QUARTERMAN, Director, § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| Respondent. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Thurman Lee Henderson, TDCJ-ID #1256706, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Abilene, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

#### C. FACTUAL AND PROCEDURAL HISTORY

In 2003, Henderson, a repeat offender, was charged by indictment with burglary of a habitation in cause number 0896827D in the 297th District Court of Tarrant County, Texas. (State

Habeas R. at 113) Henderson's trial commenced on August 16, 2004. On August 17, 2004, a jury found Henderson guilty of the offense and, on August 18, assessed his punishment at sixty-one years' confinement. (*Id.* at 114) Henderson appealed his conviction, but the Second District Court of Appeals affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused his petition for discretionary review. *Henderson v. Texas*, No. 2-04-404-CR, slip op. (Tex. App.–Fort Worth Nov. 23, 2005); *Henderson v. Texas*, PDR No. 153-06. Henderson also filed a state postconviction application for writ of habeas corpus, raising one or more of the issues presented, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. *Ex parte Henderson*, Application No. WR-67,323-02, at cover. Henderson timely filed this federal petition.

### D. ISSUES

Generally, in fifteen grounds, Henderson claims he received ineffective assistance of trial and appellate counsel, there is no evidence or insufficient evidence to support his conviction, and the reporter's record contains various inaccuracies. (Petition at 7-8)

### E. RULE 5 STATEMENT

Quarterman believes that Henderson has sufficiently exhausted his state remedies on the issues presented as required by 28 U.S.C. § 2254(b).

### F. DISCUSSION

#### 1. *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *See Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, typically it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

*2. Sufficiency of the Evidence*

Henderson claims there is no evidence or insufficient evidence to support his conviction. A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense. *Foy v. Donnelly,* 959 F.2d 1307, 1313 (5th Cir. 1992). Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such

3

claims is supplied by *Jackson v. Virginia,* 443 U.S. 307 (1979). When reviewing such claims against the underlying conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson,* 443 U.S. at 319. When faced with a record of historical facts that supports conflicting inferences, courts must presume, even if it does not affirmatively appear in the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution. *Id.* at 326. Further, under *Jackson,* the assessment of the credibility of witnesses is generally beyond the scope of review. *Schlup v. Delo,* 513 U.S. 298, 330 (1995). Determining the weight and credibility of the evidence is within the sole province of the jury. *United States v. Martinez,* 975 F.2d 159, 161 (5th Cir. 1992). Courts view any required credibility determinations in the light most favorable to the guilty verdict. *United States v. Wise,* 221 F.3d 140, 154 (5th Cir. 2000). They do not second-guess the weight or credibility given the evidence. *United States v. Ramos-Garcia,* 184 F.3d 463, 465 (5th Cir. 1999).

In Texas, a person commits an offense if, without the effective consent of the owner, the person enters a habitation with intent to commit an assault or commits or attempts to commit an assault. TEX. PENAL CODE ANN. § 30.02(a)(1) & (3) (Vernon 2003). Further, "owner" is defined as a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor. *Id.* § 1.07(a)(35)(A) (Vernon Supp. 2008). Henderson claims there was no evidence or insufficient evidence to show that he entered the apartment without the effective consent of the owner. According to Henderson, he had effective consent from Teresa Walker, his sister and the lessee of the apartment, to enter the apartment and a greater right of possession than Rose Tryon, the victim, by virtue of Teresa's consent.

The state appellate court set forth the relevant facts, in part, as follows:

4

[F]ort Worth Police Officer Michael Thomas Brown testified that he was dispatched on July 15, 2003 to the Joshua Cove Apartments for a domestic disturbance in which the complainant, Rose, reported that her ex-boyfriend was kicking in the door. He stated that he was the first officer to arrive at apartment 261 and got there at 4:47 p.m. When he arrived, Rose was very upset and crying, but [Henderson] was no longer at the apartment. Officer Brown stated that he talked with Rose approximately ten to twenty minutes after the incident occurred and that she told him that her ex-boyfriend had kicked in the door and assaulted her with a mop handle. While he was talking with Rose, Officer Brown noticed that she had a knot on the upper left side of her forehead and was holding her arm, complaining that she had pain in her wrist.

After talking with Rose and getting a description of [Henderson]'s clothing and the direction he was traveling, Officer Brown left the apartment and found [Henderson] approximately two to three minutes later in a Church's Chicken parking lot. [Henderson] matched the description that Rose had given Officer Brown at the apartment. When Officer Brown approached [Henderson], he noticed that [Henderson] was out of breath, sweaty, and had paint chips in his hair. After [Henderson] gave Officer Brown a fraudulent name, Officer Brown took [Henderson] back to the apartment, and Rose identified him as the man who broke into the apartment.

Teresa testified that neither Rose nor [Henderson] lived in the apartment with her. She stated that Rose did stay overnight about one to two times a month and that Rose would come over whenever Teresa needed a babysitter. Teresa stated that [Henderson] would come over to the apartment more than Rose, which would be about three times a week.

Teresa testified that [Henderson] was mad because Rose broke up with him and that he wanted to get back together with her. She said that in 2002, while she was at Ruby Haines's (Rose's mother) house with Rose, [Henderson] came over to the house and knocked on the door for approximately five to six minutes asking to talk to Rose. She stated that Ruby was so scared that she went and got her pistol and that [Henderson]'s mother had to be called to come and get him.

Teresa testified that she left the apartment with her children on July 15, 2002 and allowed Rose to stay and lie on the couch and watch TV. She stated that Rose had permission to be in the apartment and that no one had permission to break into the apartment. At the time of trial, Teresa still had some of Rose's granddaughter's clothes in her possession.

The appellate court determined that the evidence, viewed in a light most favorable to the verdict, was legally sufficient such that a rational trier of fact could have found beyond a reasonable

5

doubt that Henderson did not have consent to enter the apartment by breaking down the door and that Rose had a greater right to possession of the apartment than Henderson at the time of the incident. Assuming the jury believed the testimony of the state's witnesses, the state court's determination is not contrary to, or an unreasonable application of, the *Jackson* standard.

### 3. Ineffective Assistance of Counsel

Henderson claims he received ineffective assistance of court-appointed trial and appellate counsel. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington*. *Strickland*, 466 U.S. at 668. To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where, as here, the state courts have applied the *Strickland* attorney-performance standard to factual findings, a federal court will defer to the state courts' determination unless it appears the decision was: (1) contrary to or involved an unreasonable application of *Strickland*, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the state court proceedings. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002).

Henderson claims trial counsel failed to investigate his Fourth Amendment claim and to file

a pretrial motion to suppress evidence on the basis of an illegal search, seizure, identification, and arrest. Henderson asserts his rights under the Fourth Amendment were violated because he was detained about a mile from the crime scene on a vague description of what he was wearing, forcefully handcuffed without probable cause, returned to the scene and placed in a one-person lineup. The state habeas judge, who also presided over Henderson's trial, held a hearing by affidavit and, based largely on counsel's affidavit, found that counsel did not object to the search and seizure because the victim had given the officer a sufficient description of Henderson, Henderson was found a short distance away from the crime scene, and a felony had just been committed and Henderson was in the process of fleeing. (State Habeas R. at 75, 96) Citing to *Terry v. Ohio*, 392 U.S. 1 (1968), and article 14.04 of the Texas Rules of Criminal Procedure, the state court concluded that Henderson had failed to prove that he was subjected to an unreasonable search and seizure or that his arrest was unlawful.[1] Thus, applying the *Strickland* standard, the court concluded Henderson had failed to prove that counsel should have objected to the search and seizure or the arrest. (*Id.* at 100)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. A law enforcement officer's reasonable suspicion that a person was, is, or may be involved in criminal activity permits the officer to initiate a *Terry*-type stop of the person for a brief time to

---

[1]Relevant to this case, article 14.04 provides:

> Where it is shown by satisfactory proof to a police officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

TEX. CODE CRIM. PROC. ANN. art. 14.04 (Vernon 2005).

7

investigate that suspicion. *See United States v. Hensley*, 469 U.S. 221, 229 (1985). If, upon further investigation, the officer develops probable cause to believe that the person has committed a criminal offense, a warrantless arrest by the officer is reasonable under the Fourth Amendment. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Moreover, Texas police officers may not arrest someone without a warrant unless they have both probable cause and meet one of the exceptions contained in articles 14.01 through 14.04 of the Texas Code of Criminal Procedure. *See Stull v. Texas,* 772 S.W.2d 449, 451 (Tex. Crim. App. 1989); *Self v. Texas,* 709 S.W.2d 662, 665 (Tex. Crim. App. 1986). Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. *Devenpeck*, 543 U.S. at 152.

Officer Brown testified that Henderson was found in the area and in the direction indicated by Rose, matched the description by Rose that the suspect was wearing black shorts and a dark shirt, appeared sweaty and out of breath, had pieces of wood or paint chips in his hair and on his collar, had no I.D., gave a fraudulent name, and was identified by Rose, who personally knew Henderson, as the person who committed the offense. (3Reporter's R. at 23-27) If police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a crime, then a *Terry* stop may be made to investigate that suspicion. *United States v. Hensley*, 469 U.S. 221, 229 (1985). Under the circumstances of this case, seeking suppression would have been a futile effort, as reasonable suspicion justified the initial stop of Henderson, which led to probable cause to detain him and met the exception set forth in article 14.04 for warrantless arrests under state law. Counsel is not required to make futile motions or objections. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

Henderson claims that there existed a conflict of interest between him and his trial counsel and that the trial court's failure to inquire into his reasons for seeking substitute counsel forced him to go to trial with unwanted counsel and denied him effective assistance of counsel as guaranteed by the Sixth Amendment. (Petition at 7) The record reflects Henderson filed a "declaration of conflict between attorney and client" on two occasions complaining that counsel failed to meet with him or to have his pro se motions heard and that a total breakdown of communications had occurred between them because, after numerous court dates, there was "no offer." (Clerk's R. at 8, 45) Based on counsel's affidavit, the state habeas court found that counsel discussed the motions with Henderson and recalled that Henderson was upset by the state's plea bargain offers. The court further found that Henderson never advised counsel that there was a conflict or any dissatisfaction with his work. (*Id.*) As such, the state court concluded that Henderson had failed to prove a conflict of interest existed. (*Id.*) Resoluntion of this claim essentially rests upon credibility. Weighing the credibility of the affiants was the role of the state habeas court, and, the state court apparently found the affidavit of counsel to be credible on the issue. The state court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are virtually unreviewable by the federal courts. *See Pippin v. Dretke,* 434 F.3d 782, 792 (5th Cir. 2005). Henderson has not rebutted the presumption of correctness afforded to the state court's determination.

Henderson claims trial counsel failed to investigate the facts of his case, and, if he had, counsel would have discovered: (1) no medical report was filed for assault; (2) the state had no evidence; (3) the owner never filed a burglary report; (4) a copy of the lease; (5) information he gave to the investigator; and (6) potential witnesses for the defense. Based on counsel's affidavit, the state habeas court found that counsel filed a discovery motion, copied and reviewed the state's files

9

pursuant to the state's open file policy, and filed a motion to appoint a private investigator to assist him in the case. (State Habeas R. at 97) Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. at 691. A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Assuming counsel would have discovered the alleged "evidence," Henderson cannot demonstrate that the evidence would have altered the outcome of his trial.

Henderson claims trial counsel failed to object to the false testimony of Officer Brown that he observed wood and paint chips in Henderson's hair and on his collar. (Petition at 8; 3Reporter's R. at 20-21) He also claims that, in the absence of actual physical or forensic evidence of wood or paint chips, the state violated his due process rights by failing to correct the false testimony and by using the testimony in closing argument. The state habeas court rejected these claims for lack of any evidentiary basis. Then, and now, Henderson presents no evidentiary support for his claims. The record is devoid of proof that the state in any way acted improperly or knowingly in presenting false testimony or that the officer's testimony was false. Mere conclusory allegations do not raise a constitutional issue in a habeas proceeding. *See Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983). Because there is no evidence of perjury by the officer, and there is no evidence that the state sought to elicit false testimony from him, an objection by trial counsel would have been unwarranted.

Henderson claims trial counsel failed to discover the state's witnesses for impeachment purposes and to pursue his pro se motion that the state disclose "any deals, promises or inducements

made to witnesses in exchange for their testimony. . . ." Additionally, Henderson claims counsel did not assist his defense by filing pretrial motions and, instead, filed frivolous motions on the day of trial. As noted by the state habeas court, these claims are refuted by the record, which reflects that counsel filed a motion to list state's witnesses and request for criminal histories on August 8, 2004, and the state filed notice of its witnesses on August 12. (Clerk's R. at 47, 52) The record further reflects that counsel filed pretrial motions for appointment of a private investigator and for discovery in March 2004 and motions in limine, for notice of extraneous offenses, for production and inspection of evidence, and for discovery and production and inspection of evidence in April 2004. (*Id.* at 8A, 23-35; State Habeas R. at 101)

Henderson claims trial counsel failed to file a motion to quash the indictment because it alleged Rose as the owner of the apartment. As previously noted, Teresa Walker, Henderson's sister, leased the apartment and testified that Rose had not lived with her and her children at any time and had only babysat the children when needed. (3Reporter's R. at 73-82) On the other hand, she testified that Henderson was welcome to be in the apartment at any time. (*Id.* at 73-74) In rebuttal of her testimony, the state called Rose's brother and mother who both testified Rose had lived with Teresa in the apartment during the relevant time period. (*Id*. at 111-19) The state courts found the evidence was sufficient to prove that, as defined by Texas law, Rose had a greater right than Henderson to possession of the apartment on the date in question and was an "owner" for purposes of the statute. (State Habeas R. at 100-01) Deferring to the state courts' interpretation of Texas law, any objection by counsel would have been futile.

Henderson claims trial counsel failed to challenge the sufficiency of the evidence to show he entered the apartment without the consent of his sister or that an assault occurred in the absence

of a burglary report and/or medical records. Notwithstanding this fact, Rose's testimony, in conjunction with the other testimonial and photographic evidence, was sufficient under the *Jackson* standard to support Henderson's conviction.

Henderson claims trial counsel failed to object to the disjunctive jury charge. The indictment alleged that Henderson entered the habitation with the intent to commit assault (paragraph one) and entered the habitation and did attempt to commit assault (paragraph two). Similiarly, the jury was charged on both theories in the disjunctive. (*Id.* at 60-62) The state habeas court rejected this claim, stating that, as a matter of Texas law, it was permissible for a trial court to submit a disjunctive charge and obtain a general verdict, as here, where the alternate theories involve the commission of the same offense. (*Id.* at 101) Because there was no error in the charge, any objection by counsel would have been meritless.

Henderson claims trial counsel represented conflicting interests at trial. Henderson appears to complain of counsel's theory during closing argument that the proper charge and conviction in the case would be the lesser included offense of assault causing bodily injury. (3Reporter's R. at 129) Having reviewed the record of the proceedings, it appears counsel's argument was an effort to minimize Henderson's criminal culpability. Decisions regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that they permeate the entire trial with obvious unfairness, such showing not having been demonstrated by Henderson. *See Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983).

Henderson claims his trial and appellate counsel were appointed by the same court officer (the trial judge), thereby creating a conflict of interest. The state habeas court found no evidence that appellate counsel harbored any bias toward Henderson or that the two attorneys ever worked

in the same office or the same building. (State Habeas R. at 98) Absent some evidentiary basis, this claim is patently frivolous.

Henderson claims appellate counsel should have raised his Fourth Amendment and ineffective assistance claims in appellant's brief. As to the former, the state habeas court, as well as the undersigned, have determined that Henderson's Fourth Amendment claims lack an evidentiary or legal basis. As to the latter, under Texas jurisprudence, an application for writ of habeas corpus is the more appropriate vehicle to raise ineffective assistance of counsel claims. (State Habeas R. at 104) Henderson has failed to identify any arguably meritorious grounds upon which he was likely to prevail on appeal. Thus, appellate counsel's performance was not objectively unreasonable for failing to raise the issues on appeal.

Henderson presents no compelling argument or evidence to rebut the state courts' adjudication of his ineffective assistance claims, and there is nothing in the record to suggest that but for counsel's alleged acts or omission, the jury would have acquitted Henderson or that he would have prevailed on appeal. Henderson has not met his burden of overcoming the strong presumption that his trial and appellate attorneys were competent. Even if he could show deficient performance, he has not demonstrated that but for counsel's acts or omissions the outcome of his trial or appeal would have been different.

### *4. Inaccuracies in the Reporter's Record*

Henderson claims the reporter's record contains certain inaccuracies. His trial counsel claims, on the other hand, that his recollection of the testimony agrees with the court reporter's record. (State Habeas R. at 76) Absent evidentiary support, the state habeas court determined that Henderson could not prove that the reporter's record was not a correct reflection of the proceedings

13

or that the reporter's record contributed to his conviction or punishment or adversely affected his appeal. Henderson has not presented evidence to rebut the presumptive correctness of the state courts' determination of the issue or the presumption of regularity of the state court records. *See Webster . Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974).

## II. RECOMMENDATION

Henderson's petition for writ of habeas corpus should be DENIED.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document. The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until January 1, 2009. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(B)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV. ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until January 1, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 11, 2008.

                                                  /s/ Charles Bleil
                                                  CHARLES BLEIL
                                                  UNITED STATES MAGISTRATE JUDGE